MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2015 ME 109
Docket:       Ken-14-362
Argued:       June 16, 2015
Decided:      August 11, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.


STATE OF MAINE

v.

WADE R. HOOVER


JABAR, J.

[¶1]  Wade R. Hoover appeals from an order of the trial court (*Murphy, J.*) denying his motion to dismiss the State's indictments of thirteen counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2014).  Hoover argues that the State's indictments violate constitutional protections against double jeopardy because (1) he has already been punished for the sexually assaultive conduct by way of his federal prison sentence related to federal child pornography convictions; and (2) the state and federal investigative and prosecutorial agencies colluded to the extent that they ceased to operate as separate sovereigns, thus triggering an exception to the "dual sovereignty" doctrine of double jeopardy jurisprudence.  We affirm.

## I. BACKGROUND

[¶2]   Viewed in the light most favorable to the State, the motion record supports the following facts.  *See Heon v. State*, 2007 ME 131, ¶ 5, 931 A.2d 1068.

[¶3]   On October 3, 2012, U.S. Homeland Security Investigations (HSI) agents and Maine State Police (MSP) officers jointly conducted a consented-to search of computers at an office in Augusta, after the MSP Computer Crimes Unit received a tip that a computer registered to that office was the source of child pornography.  The investigation led to Hoover, who admitted to his involvement.  Investigators discovered on Hoover's computer hundreds of images of child pornography as well as videos that depicted Hoover sexually assaulting children.  State police immediately took Hoover into custody on a charge of possession of sexually explicit materials (Class C), 17-A M.R.S. § 284(1)(C) (2014).

[¶4]   Hoover was arraigned on the charge of possession of sexually explicit materials on October 5, 2012.  That same day, federal agents obtained a warrant for Hoover's arrest.  The warrant was not immediately executed, however, and instead was filed as a detainer so that Hoover could be taken into federal custody if the State dismissed its charge or if Hoover were to be released from state custody.

[¶5]   Federal and state authorities continued to investigate Hoover while he remained in state custody between October and December 2012, with HSI agents and MSP detectives often conducting joint searches and interviews.  During that

time, the Kennebec County District Attorney's Office communicated with federal prosecutors regarding the status of the State's case against Hoover.  An October 9, 2012, Kennebec County District Attorney's Office internal memorandum reads:

> Feds will be taking the production piece . . . There will also be potentially a [gross sexual assault charge] in Skowhegan . . . [D]o not let [Hoover] plead to [possession of sexually explicit materials] before all State charges are brought.  [Dismiss] if he does.

In early November, the Kennebec County District Attorney told an Assistant United States Attorney that the state charge would be dismissed in December so that the federal charges could be pursued.  The D.A.'s handwritten note on the State's criminal complaint for possession of sexually explicit materials reads: "We will dismiss to federal prosecution on December 1st."

[¶6]  Hoover remained in state custody until he went into federal custody on December 7, 2012, after the State dismissed the charge of possession of sexually explicit materials.  On February 5, 2013, he waived federal indictment and pleaded guilty to sexual exploitation of a child, 18 U.S.C.S. § 2251(a), (e)(1) (LEXIS through PL 114-37, approved 7/20/15) ("production" charge), and possession of child pornography, 18 U.S.C.S. § 2252A(a)(5)(B) (LEXIS through PL 114-37, approved 7/20/15) ("possession" charge).  Sentencing was scheduled for July 2, 2013.

4

[¶7]  On March 14, 2013, the Somerset County Grand Jury indicted Hoover on one count of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C), and on May 30 the Kennebec County Grand Jury indicted him on twelve additional counts of gross sexual assault (Class A), *id*.  On June 25, 2013, he was arraigned on and pleaded not guilty to all of the gross sexual assault charges.

[¶8]  On July 2, 2013, the United States District Court for the District of Maine (*Woodcock, J.*) sentenced Hoover to 360 months in prison on the production count and 120 months in prison on the possession count, to be served consecutively, as well as a lifetime term of supervised release.  In calculating Hoover's sentence the United States District Court expressly considered Hoover's sexual assault of the young victims as aggravating factors that increased his sentence.

[¶9]  On February 13, 2014, Hoover filed a motion to dismiss the State's indictments for gross sexual assault, arguing that the State's prosecution subjected him to double jeopardy in violation of both U.S. Const. amend. V and Me. Const. art. I, § 8.  After a hearing, the court denied Hoover's motion by written order. The court found that, although Hoover's "federal sentence was directly and significantly increased as a consequence of his sexual assault of the two victims" such that "the current [s]tate prosecution, if successful, could result in [Hoover] being punished twice for the same conduct," the dual sovereignty doctrine

nonetheless permitted the State's prosecution. The court rejected Hoover's argument that the "*Bartkus* exception to the general rule allowing double punishment by separate sovereigns" required dismissal of the State's charges, *see Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959), finding that "[t]here is simply no evidence . . . that the state prosecutors in this case have been so dominated or manipulated by the prosecutors in the federal case" such that the exception would apply, *see United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996). Hoover appeals.

## II. DISCUSSION

[¶10] Hoover contends that the court erred in denying his motion to dismiss[1] because the State's criminal charges violate his constitutional protections against double jeopardy. *See* U.S. Const. amend. V; Me. Const. art. I, § 8. Specifically, he contends that (1) his federal prison sentence already subjected him to punishment for the same criminal acts for which the State now seeks to punish him, and (2) the dual sovereignty doctrine does not permit the State's prosecution because the doctrine's so-called "*Bartkus* exception" applies. "Whether a criminal prosecution violates the state or federal constitutional prohibition against double jeopardy is a

---

[1] Although Hoover appeals from an interlocutory order, "[a]n order denying a motion to dismiss on double jeopardy grounds is immediately appealable as an exception to the final judgment rule." *State v. Davis*, 580 A.2d 163, 164 n.1 (Me. 1990).

6

question of law that is reviewed de novo." *State v. Mitchell*, 1998 ME 128, ¶ 4, 712 A.2d 1033.

A. Duplicative Punishment

[¶11] The double jeopardy clause bars "multiple punishments for the same offense." *State v. Labbe*, 2009 ME 94, ¶ 4, 979 A.2d 693 (quotation marks omitted). The traditional test for determining whether multiple punishments are for the "same offense" for double jeopardy purposes—the "same-elements" test, sometimes referred to as the "*Blockburger* test"—"inquires whether each offense contains an element not contained in the other; if not, they are the same offen[s]e and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). As Hoover concedes, the same-elements test is inapplicable here because the state crime of gross sexual assault and the federal crimes of sexual exploitation of a child and possession of child pornography contain different elements. *Compare* 17-A M.R.S. § 253(1)(C), *with* 18 U.S.C.S. §§ 2251(a), (e)(1), 2252A(a)(5)(B).

[¶12] However, citing *Witte v. United States*, 515 U.S. 389 (1995), Hoover argues that, because the sexual assaults weighed so heavily in the federal court's sentencing decision on the production and possession charges, the State's current

prosecution related to that same conduct presents the risk of unconstitutional duplicative punishment.

[¶13]    In *Witte*, the defendant was convicted of federal marijuana distribution charges.  *Id*. at 391-93.  In imposing a sentence on the marijuana conviction, the federal sentencing court took into account the defendant's prior conduct related to the importation of cocaine because it considered the cocaine-related activities to be "part of the same continuing conspiracy," and therefore "relevant conduct" for sentencing purposes.  *Id*. at 393-94.  The defendant was later indicted on cocaine importation charges based on the same conduct that the sentencing court had previously considered. *Id*. at 394-95.

[¶14]   The United States Supreme Court held that the Double Jeopardy Clause was not implicated by the second indictment, reasoning that "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause." *Id*. at 399.  Rather, the Court held, a defendant in that situation is "punished, for double jeopardy purposes, only for the offense of which the defendant is convicted." *Id*. at 397.  However, the Court indicated that if the enhancing role played by the relevant conduct is too significant, "consideration of that conduct in

sentencing [may] become a tail which wags the dog of the substantive offense." *Id*. at 403 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)).

[¶15]  Here, the United States District Court expressly considered Hoover's sexually assaultive conduct in sentencing Hoover on the federal production and possession charges, and substantially increased Hoover's sentence as a result of that conduct.  If Hoover's sexually assaultive conduct effectively became the operative factor in Hoover's federal sentence, the State's current prosecution might, as the trial court found, result in Hoover being punished twice for the same criminal conduct.[2]

[¶16]  However, we need not decide whether the sexual assaults became the tail that wagged the dog of the substantive federal offenses.  Even if the State's current prosecution subjects Hoover to the risk of being punished twice for the same conduct, such duplicative punishment is constitutional when, as is the case here, the punishments are imposed by separate sovereigns.

B.    Dual Sovereignty

[¶17]  The "dual sovereignty doctrine" provides that "prosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, subject the defendant for the same offen[s]e to be twice put in jeopardy." *Mitchell,*

---

[2]  We note that if Hoover is eventually convicted of the gross sexual assault charges, the trial court could consider, as a basis for a downward departure in the resulting sentence, that the sexually assaultive conduct underlying the offenses has previously been taken into account in sentencing for a different offense. *See Witte v. United States*, 515 U.S. 389, 405-06 (1995).

1998 ME 128, ¶ 6, 712 A.2d 1033 (quotation marks omitted). Thus, successive federal and state prosecutions and punishments for the same conduct may proceed without violating constitutional protections against double jeopardy. *See United States v. Lanza*, 260 U.S. 377, 382 (1922); *State v. Castonguay*, 240 A.2d 747, 749-50 (Me. 1968). However, Hoover contends that *Bartkus*, 359 U.S. at 123-24, provides an exception to the dual sovereignty doctrine when a state prosecution is merely a "sham" or a cover for a federal prosecution such that the state acts only as a "tool" of the federal entity.

[¶18] Contrary to Hoover's argument, there is no evidence of a "sham" prosecution here, nor is there evidence that the state prosecutors acted merely as "tools" of the federal prosecutors. *See id*. at 123. Rather, the record reveals many instances of each sovereign acting to protect its own interests, and collaborating when those interests intersected. *Guzman*, 85 F.3d at 828 (1st Cir. 1996) ("Cooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule."). Although federal authorities benefited from the State's maintaining of custody over Hoover,[3] the record shows that the State's decision to immediately arrest Hoover was

---

[3] The court heard testimony that the State's custody of Hoover allowed federal authorities more time to investigate Hoover without triggering federal Speedy Trial Act timelines. *See* 18 U.S.C.S. § 3161(b) (LEXIS through PL 114-40, approved 7/30/15).

motivated not by a desire to act as a tool for federal prosecutors, but by public safety concerns. Further, the Kennebec County D.A.'s office was already considering charging Hoover with gross sexual assault shortly after Hoover's arrest in October 2012, and it ultimately pursued those charges.

[¶19] Because there is no evidence to sustain Hoover's contention as to the applicability of the so-called *Bartkus* exception to the dual sovereignty doctrine, double jeopardy principles do not bar the present state prosecution, regardless of any potential for duplicative punishment.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Wade R. Hoover

Meaghan Maloney, District Attorney, Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2013-486
Somerset County Superior Court docket number CR-2013-72
FOR CLERK REFERENCE ONLY