MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 158
Docket:      Ken-16-118, SRP-16-119
Argued:      May 11, 2017
Decided:     July 18, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

WADE R. HOOVER

ALEXANDER, J.

[¶1]   Wade R. Hoover appeals from sentences totaling sixty years imposed by the trial court (Kennebec County, *Murphy, J.*)  following his guilty plea to four counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2016), in cases from Somerset County and Kennebec County that were consolidated for sentencing.

[¶2]   In this appeal, although the consecutive sentences imposed on Hoover totaled less than the maximum sentence that could have been imposed on any one of the four counts to which he pleaded guilty,[1] Hoover contends that (1) the court erred by imposing a sentence that is

---

[1]  Title 17-A M.R.S. § 1252(4-E) (2016) mandates a "basic term of imprisonment" of "at least 20 years" and "a definite term of imprisonment for any term of years" for a person convicted of gross sexual assault upon a person under twelve years of age as defined by 17-A M.R.S. § 253 (2016).

2

disproportionate to the offenses charged, and (2) the court was required to find specific aggravating circumstances before imposing what Hoover claims is a de facto life sentence. We affirm the sentences.

[¶3] This is Hoover's second appeal arising out of the events that led to these charges. In his first appeal, Hoover unsuccessfully challenged the maintenance of this prosecution following his plea and sentencing in federal court on charges of sexual exploitation of a child and possession of child pornography that arose from his creating still and video images of the sexual violence that led to the State's gross sexual assault charges. *State v. Hoover* (*Hoover I*), 2015 ME 109, 121 A.3d 1281.

## I. CASE HISTORY

[¶4] In October 2012, agents of the U.S. Department of Homeland Security and the Maine State Police discovered hundreds of images and videos of sexual assaults of a child on Hoover's computer after receiving a tip and conducting a consented-to search. *Id.* ¶ 3. Hoover admitted his involvement and was immediately taken into custody. *Id.* The State charged him with possession of sexually explicit material (Class C), 17-A M.R.S. § 284(1)(C) (2016). *Id.* Hoover remained in State custody until December 2012, when he was arrested on a federal warrant and taken into federal custody. *Id.* ¶¶ 4-6.

[¶5]   On February 5, 2013, Hoover waived federal indictment and pleaded guilty to sexual exploitation of a child, 18 U.S.C.S. § 2251(a), (e) (LEXIS through Pub. L. No. 115-42), and possession of child pornography, 18 U.S.C.S. § 2252A(a)(5)(B) (LEXIS through Pub. L. No. 115-42).  *Id.* ¶ 6.  In July 2013, the United States District Court for the District of Maine (*J. Woodcock, J.*) held a sentencing hearing.  *Id.* ¶ 8.  In the federal proceeding, as in this proceeding, Hoover contested the prosecution's claims that he had drugged his victims to render them unconscious and that he had penetrated his victims anally.  In the findings supporting sentencing, both the United States District Court and the Superior Court found that Hoover had drugged and anally penetrated his victims.

[¶6]   At its July 2013 sentencing hearing, the federal court made the following sentencing guidelines calculations: "As to one of the victims (Male Minor Child 'A'), the base offense level was 32, pursuant to U.S.S.G. § 2G2.1(a), to which level the following were added: four levels because the victim was younger than twelve years, pursuant to U.S.S.G. § 2G2.1(b)(1)(A); two levels because [Hoover] subjected the victim to anal sex, pursuant to U.S.S.G. § 2G2.1(b)(2)(A); four levels because [Hoover] produced videos in which he anally penetrated the victim with his penis, pursuant to U.S.S.G. § 2G2.1(b)(4);

4

and two levels because the minor victim spent the night at [Hoover's] house and elsewhere and was in his care and custody, pursuant to U.S.S.G. § 2G2.1(b)(5). The resulting adjusted offense level was 44." *See Hoover v. United States*, 2016 U.S. Dist. LEXIS 176564, at *5-6 (Dec. 21, 2016), *accepted*, 2017 U.S. Dist. LEXIS 6554 (Jan. 18, 2017).[2]

[¶7] "As to the other victim (Male Minor Child 'B'), the calculations were the same, but the four-level enhancement for the victim, pursuant to U.S.S.G. § 2G2.1(b)(4), was based on the Court's finding that [Hoover] penetrated the victim anally with [his] penis and fingers, and with two unidentified objects. The resulting adjusted offense level was 44." *Id.*

[¶8] In setting the length of Hoover's sentence, the federal court noted that the applicable guideline range for Hoover's conduct was life imprisonment, but the statutorily authorized maximum was 480 months, or forty years. After considering Hoover's sexual assaults of the young victims as an aggravating factor, the court sentenced Hoover to 360 months in prison on the exploitation charge and 120 months in prison on the possession charge, to be served consecutively, as well as a lifetime of supervised release. *Hoover I*,

---

[2] The 2016 recommended decision by the magistrate judge (*Nivison, Mag.*) on Hoover's motion to vacate, set aside, or correct his sentences, pursuant to 28 U.S.C. § 2255 (2012), summarized the 2013 sentencing proceeding and was accepted and affirmed by the sentencing judge (*J. Woodcock, J.*).

2015 ME 109, ¶ 8, 121 A.3d 1281.  Hoover is expected to be released from federal custody in 2047, at the age of sixty-nine.

[¶9]  After his February 2013 guilty pleas to the federal charges, Hoover was indicted by the State on thirteen counts of gross sexual assault upon a child under the age of twelve, 17-A M.R.S. § 253(1)(C), arising from the sexual violence depicted in the images and videos discovered on his computer. *Hoover I*, 2015 ME 109, ¶ 7, 121 A.3d 1281.  The Somerset County grand jury indicted Hoover on one count of gross sexual assault.  The Kennebec County grand jury indicted him on twelve additional counts of gross sexual assault involving a different victim.

[¶10]  In February 2014, Hoover moved to dismiss the State's indictments, arguing that the State's prosecution subjected him to double jeopardy in violation of both the federal and state constitutions.  *Id.* ¶ 9.  The motion was denied, and Hoover appealed.  *Id.*  We affirmed the motion court's order concluding that there was no evidence supporting the *Bartkus* exception to the dual sovereignty doctrine,[3] and that double jeopardy principles did not bar the State's prosecution, regardless of any potential for duplicative

---

[3]  *See Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959); *see also United States v. Guzman*, 85 F.3d 823, 826-27 (1st Cir. 1996); *State v. Mitchell*, 1998 ME 128, ¶ 6, 712 A.2d 1033.

6

punishment.[4]  *Id.* ¶ 19.  In a footnote, we stated that "if Hoover is eventually convicted of the gross sexual assault charges, the trial court could consider, as a basis for a downward departure in the resulting sentence, that the sexually assaultive conduct underlying the offenses has previously been taken into account in sentencing for a different offense."  *Id.* ¶ 15 n.2.

[¶11]    After withdrawing several pending motions, on November 30, 2015, Hoover pleaded guilty to the one count of gross sexual assault in the Somerset County case and to counts one, six, and twelve in the Kennebec County case.  The court (*Murphy, J.*) conducted an inquiry pursuant to M.R.U. Crim. P. 11(b).  The State provided the court with the following factual bases for the charges.  *See* M.R.U. Crim. P. 11(b)(3), (e).

[¶12]  On October 3, 2012, federal and state law enforcement agents conducting a child pornography investigation discovered hundreds of images and videos of sexual assaults of a child on Hoover's computer after a consented-to search.  Some of the images and videos seized from Hoover appeared to be "homemade."  Hoover admitted that he made the videos and that he "messed with" or "fooled around with" the victims, but he denied

---

[4]  Hoover filed a writ of certiorari to the United States Supreme Court seeking review of our decision, but his petition was denied on January 19, 2016.  *See State v. Hoover*, 2015 ME 109, 121 A.3d 1281, *cert. denied*, 136 S. Ct. 905 (2016).

drugging or penetrating them. The victims appeared to be unconscious in the videos, and they have no memory of the sexual assaults. The videos showed sexual acts committed by Hoover against the victims and appeared to show penetration. Hoover was the Somerset County victim's karate teacher. In April 2012, he took the Somerset County victim, then eleven years old, to a cabin where he sexually assaulted the boy as shown in the video. Hoover assaulted the Kennebec County victim in December 2008 when the victim was ten years old and again in July 2009 and February 2010 when the victim was eleven years old.[5]

[¶13] The court accepted the open plea and continued the matter for sentencing. Before the sentencing hearing, Hoover filed a motion objecting to the State's request that the court review certain images and videos of the assaults that were contained on a thumb drive. The court denied Hoover's motion and viewed the images in camera. The parties disagreed on whether the images and videos contained evidence of drugging and penetration. The court stated that it would make factual findings on these issues.

---

[5] The State did not further describe Hoover's relationship with the Kennebec County victim at the Rule 11 hearing. In its sentencing memorandum, the State explained that Hoover had dated the Kennebec County victim's mother before enlisting in the military in 2004. When Hoover left the service in November 2008, he returned to the boy's life, including as his karate teacher.

[¶14]  On February 24, 2016, the court held a contested sentencing hearing.  Before the hearing, the State asked the court to engage in a "*Shortsleeves*-type" analysis and find aggravating circumstances given that Hoover could be sentenced to any term of years amounting to a de facto life sentence.  *See State v. Shortsleeves*, 580 A.2d 145, 149-50 (Me. 1990).  The court noted that for the charges in these cases the Legislature has not authorized life sentences, only de facto life sentences, and declined to apply *Shortsleeves* stating that the statute and case law do not limit what constitutes an aggravating factor.

[¶15]  Both Hoover and the State submitted sentencing memoranda to the court.  Hoover also provided twenty-four exhibits, including numerous sentencing orders and transcripts from what Hoover alleged were other, similar sentencings.  The State recommended twenty-five years' imprisonment in the Somerset County case, forty years' imprisonment in the Kennebec County case, to be served consecutively, and lifetime supervised release.  Hoover requested an overall period of incarceration of twenty-five to thirty years.  Hoover agreed that lifetime supervised release was appropriate.

[¶16]  After considering the images and videos on the thumb drive and the attached forensic report, the court found that the victims *had* been

drugged and that there was penetration. The court set the basic sentence for the Somerset County case at twenty years and the basic sentence in the Kennebec County case at thirty years based on multiple incidents. The court considered the drugging and penetration in determining the basic sentence as different ways that the offenses could be committed and not as aggravating factors in determining the maximum sentence. For aggravating factors, the court found that the victim impact on the boys and their families was "profound," Hoover breached their relationships of trust, and he "memorialized these incidents by photographing these children in ways that also violated their dignity." For mitigating factors, the court found that Hoover had no prior criminal history, he was honorably discharged from the military, and he pleaded guilty, sparing the victims and their families the rigors of trial.

[¶17] The court concluded that the aggravating factors outweighed the mitigating factors, primarily because of the victim impact, and determined that the maximum sentences would be twenty-five years for the Somerset County case and thirty-five years for the Kennebec County cases. Because there were two different victims and the assaults took place at different times and in different places, the court ordered that the sentences be served

consecutively. The court ordered that the state sentence run concurrently with the federal sentence based on the "downward deviation" suggestion in *Hoover I*. *See* 2015 ME 109, ¶ 15 n.2, 121 A.3d 1281. The court determined that lifetime supervision was appropriate given the number and nature of the violations and the public safety risk.[6] After considering the "principles of sentencing," the court found that "a lesser sentence than the one that is being imposed in these matters would diminish the gravity of what occurred to these boys and also would violate the principle that this Court . . . must consider public safety in imposing sentences for this sort of conduct."

[¶18] Hoover filed this direct appeal challenging the legality of his sentences. *See* 15 M.R.S. § 2115 (2016); M.R. App. P. 2. Hoover also filed an application for leave to appeal from his sentence, challenging the propriety of his sentences. *See* 15 M.R.S. § 2151 (2016); M.R. App. P. 20. The Sentence Review Panel granted Hoover leave to appeal on the issues of whether the sentencing court "sufficiently outline[d] the justification for such a lengthy sentence" and whether we "should impose specific requirements on a trial court as a precondition for imposing a de facto life sentence." The Sentence

---

[6] Pursuant to 17-A M.R.S. § 1231(2)(C) (2016), a lifetime term of supervised release is mandatory for a person sentenced, as Hoover was, under 17-A M.R.S. § 1252(4-E).

Review Panel, however, denied leave to appeal as to the remaining issues raised in his application.[7]

## II. LEGAL ANALYSIS

A. Specific Requirements for a De Facto Life Sentence

[¶19] Citing *Shortsleeves*, 580 A.2d at 149-50, Hoover contends that the sentencing court was required to find specific aggravating circumstances before imposing what he asserts was a de facto life sentence for the gross sexual assaults. Because, he contends, "the [L]egislature provided very little in the way of guidance," Hoover urges us to articulate factors to be considered by sentencing courts when imposing a term of years that amounts to a de facto life sentence.

[¶20] *Shortsleeves* involved an appeal of a life sentence for murder. *Id.* at 145. In *Shortsleeves*, we indicated that our purpose for addressing sentencing was to "provide the sentencing court with broad guidelines for the circumstances in which the harshest penalty, a life sentence, may be imposed."

---

[7] Specifically, Hoover was denied leave to appeal whether (1) the trial court abused its discretion in imposing a sixty-year sentence on four counts of gross sexual assault as compared to sentences imposed in similar cases, (2) the sentence was excessive based on Hoover's lack of criminal history, personal circumstances, and "excellent prospects for rehabilitation," (3) the trial court adequately articulated its basis for the sentence and analyzed the crimes independently of one another in accordance with *Hewey*, (4) there was sufficient evidence to support the aggravating factors found by the court, and (5) the trial court properly admitted video evidence at the sentencing hearing.

12

*Id.* at 149.  The opinion distinguished a life sentence from a "term of years."  *Id.* Adopting the holding of *State v. Anderson*, Nos. AD-78-37, 78-40 (Me. App. Div. June 30, 1980),[8] the *Shortsleeves* opinion stated: "[T]he imposition of a life sentence has such a serious impact on the offender so different from the impact of a sentence for a term of years that a life sentence is never justified unless the murder is accompanied by aggravating circumstances." 580 A.2d at 149.  After listing seven aggravating circumstances, we had held in *Shortsleeves* that a life sentence for a particular crime "may not be imposed unless there are aggravating circumstances of the type" we enumerated. *Id.* at 150.

[¶21]  In *State v. Reese*, 2010 ME 30, ¶¶ 26-27, 991 A.2d 806, an appeal of a sentence of a term of years, we stated: "In *Shortsleeves,* we reasoned that the additional aggravating factors must be demonstrated because of the uniquely serious impact of a life sentence as compared with a sentence of a term of years. . . . We decline to require any showing of particular aggravating factors when the sentence, on a Class A crime, is to a term of thirty years or

---

[8]  The underlying murder convictions were affirmed in *State v. Anderson,* 409 A.2d 1290, 1307 (Me. 1979).

less.[9]  The court need only determine, for a relatively long sentence within that range, that the crime and the manner in which it was committed place it 'at the most serious end of the spectrum for purposes of a basic sentence . . . .'"

[¶22]  *Shortsleeves*, as applied in *Reese*, requires a finding of aggravating circumstances only when (1) the sentence at issue is imposed upon conviction for a single crime and (2) the sentence imposed is a life sentence, not a sentence for a term of years.  Hoover's sentence met neither of these criteria. The sixty-year total sentence resulted from consecutive sentences for four crimes,[10] not a single crime, and the sentences imposed were for terms of years, not the life sentence for which *Shortsleeves* directs that aggravating circumstances must be found.  The trial court correctly determined that the *Shortsleeves* analysis was not required in Hoover's sentencing.

B.     Constitutionally Disproportionate Sentence[11]

[¶23]  Hoover argues that the trial court imposed an illegal sentence pursuant to Me. Const. art. I, § 9, because his aggregate sentence of sixty years'

---

9  The maximum sentence that could have been imposed on the defendant in *State v. Reese*, 2010 ME 30, ¶ 24, 991 A.2d 806, for a Class A crime was a "definite period not to exceed 30 years." *See* 17-A M.R.S. § 1252(2)(A) (2016).

10  The court sentenced Hoover to twenty-five years' imprisonment on the one count in the Somerset County case; and to thirty-five years' imprisonment on each of the three counts in the Kennebec County case, which are to be served concurrently.  The sentence from the Kennebec County case is to be served consecutively to the Somerset County sentence for a sixty-year total sentence.

imprisonment is disproportionate to his offenses. The sentence, he contends, "carries an inference of disproportionality due to the extreme length of the sentence, and failure of the trial court to balance the legislatively established purposes of sentencing under 17-A M.R.S.[] § 1151."

[¶24] Article I, section 9 of the Maine Constitution requires that "all penalties and punishments shall be proportioned to the offense," and bars infliction of "cruel []or unusual punishments." *See State v. Freeman*, 2014 ME 35, ¶ 12, 87 A.3d 719.

[¶25] In evaluating Hoover's constitutional proportionality claim, neither the general propriety of the sentence, evaluated according to the so-called *Hewey* analysis,[12] nor Hoover's lack of a serious criminal record or other individual factors, have any significance in determining whether his punishment is disproportionate and thus unconstitutional. *See State v. Ward*, 2011 ME 74, ¶ 15, 21 A.3d 1033; *State v. Gilman*, 2010 ME 35, ¶ 21, 993 A.2d 14 (holding that article I, section 9 of the Maine Constitution "does not require consideration of the individual circumstances of each offender").

---

[11] Other than the proportionality issue, Hoover does not argue, and the record here does not indicate, that the sentences imposed were illegal or imposed in an illegal manner. *See State v. Schmidt*, 2010 ME 8, ¶ 6, 988 A.2d 975. The court had jurisdiction to sentence Hoover, *see* 15 M.R.S. § 1 (2016), and the period of incarceration for each charge, and in total, was within the range authorized by law, *see* 17-A M.R.S. §§ 1252(4-E), 1256(2)(A) (2016).

[12] *State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993); 17-A M.R.S. § 1252-C (2016).

[¶26]   The test we have applied to determine whether a particular punishment violates article I, section 9 is (1) whether the sentence imposed is "greatly disproportionate" to the crime, and (2) whether the sentence "offends prevailing notions of decency, whether it shocks the conscience of the public, or our own respective or collective sense of fairness, or whether it is inhuman or barbarous."   *Ward*, 2011 ME 74, ¶ 18, 21 A.3d 1033 (quoting *Gilman*, 2010 ME 35, ¶ 23, 993 A.2d 14).   In applying that test, we recognize that "only the most extreme punishment decided upon by the Legislature as appropriate for an offense could so offend or shock the collective conscience of the people of Maine as to be unconstitutionally disproportionate, or cruel and unusual."   *Id.* (alteration omitted).

[¶27]   Here the allegedly disproportionate punishment arises from the aggregation of consecutive sentences, neither of which is individually disproportionate.   The sentence for the Somerset County case, twenty-five years, was twenty-five percent higher than the twenty-year minimum basic sentence set by law.   *See* 17-A M.R.S. § 1252(4-E).   The sentence for the Kennebec County cases, thirty-five years, was seventy-five percent higher than the twenty-year basic sentence, but far below the "any term of years" sentence authorized by law.   *Id.*

16

[¶28] Addressing a challenge to consecutive sentences as constitutionally disproportionate in the aggregate in *State v. Stanislaw*, we stated that "[w]hen consecutive sentences are imposed, the sentencing court must make a determination that the unsuspended portion of any consecutive sentence is not excessive and is proportionate to the offense." 2013 ME 43, ¶ 24, 65 A.3d 1242 (citing Me. Const. art I, § 9). This suggests that the court must begin by determining excessiveness and proportionality individually for each consecutive sentence, rather than for the aggregate sentence. That view is confirmed by *Stanislaw's* observation that "[i]f the court decides to impose consecutive sentences for various convictions, it must perform a separate *Hewey* analysis for each conviction."[13] 2013 ME 43, ¶ 16, 65 A.3d 1242.

[¶29] Hoover argues that the trial court effectively sentenced him to a single sixty-year prison term. That argument would be more tenable had Hoover's consecutive sentences been imposed on several charges arising out of a single criminal episode or event. But even with such events, consecutive

---

[13] The *Stanislaw* opinion further observes that "[i]n order to ensure that its final sentence accurately reflects the court's determination of an appropriate sentence for multiple offenses, a sentencing court should make its decision about concurrent or consecutive imposition before it undertakes the third step of the *Hewey* analysis." 2013 ME 43 ¶ 16, 65 A.3d 1242. That analysis from *Stanislaw* cannot apply here because, by law, the third step of the *Hewey* analysis is inapplicable, as suspension of any portion of the sentence of incarceration is barred and imposition of a life term of supervised release is mandated following release from incarceration. *See* 17-A M.R.S. § 1231(1), 2(C) (2016).

sentences may be imposed for separate and serious crimes that are committed in the course of a single criminal event. *See State v. Commeau*, 2004 ME 78, ¶¶ 1, 14-24, 852 A.2d 70 (affirming consecutive sentences for kidnapping and gross sexual assault when the kidnapping occurred before and continued after the gross sexual assault). Here, the sexual assaults for which consecutive sentences were imposed involved different victims and occurred years apart in different counties. Pursuant to 17-A M.R.S. § 1256(2)(A) (2016), the trial court properly imposed consecutive sentences in such circumstances.

[¶30] When consecutive sentences have been properly imposed, we have held that "[c]onsecutive sentences are separate punishments for different offenses, and two sentences do not become a single sentence by virtue of their running consecutively." *State v. Keene* 2007 ME 84, ¶ 26, 927 A.2d 398 (citations omitted). Because "a defendant does not have a constitutional right to serve concurrent sentences for multiple violent offenses," *id.*, a defendant's "constitutional argument concerning the legality of his sentences is limited to a determination of whether each sentence individually is cruel or unusual." *Ward*, 2011 ME 74, ¶ 22, 21 A.3d 1033.

[¶31]   When determining whether a punishment is disproportionate and violative of article I, section 9, we apply the two-part test addressed in paragraph twenty-six.  *Ward*, 2011 ME 74, ¶ 18, 21 A.3d 1033.  "[W]e look to see whether a particular sentence is greatly disproportionate to the offense for which it is imposed, and if it is not, we then examine whether it offends prevailing notions of decency."  *Id.* ¶ 18 n.4.  "[I]f a punishment fails either part of the test, it is unconstitutional."   *Id.*; *accord State v. Frye*, 390 A.2d 520, 521 (Me. 1978).  "We review the legality and constitutionality of a sentence de novo."  *State v. Bennett*, 2015 ME 46, ¶ 14, 114 A.3d 994.

[¶32]   Addressing Hoover's sentences, first, we compare the gravity of the offenses with the severity of the sentences.  *See Stanislaw*, 2013 ME 43, ¶ 29, 65 A.3d 1242; *Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033.  Second, in the "rare case in which this threshold comparison leads to an inference of gross disproportionality [we] should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction."  *Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033 (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010) (alterations omitted)).

[¶33]   Hoover urges that a more lenient sentence was appropriate because he did not physically injure, kidnap, torture, maim, mutilate, or

murder the victims. However, the gravity of the offenses for which Hoover was convicted is substantial given the court's findings of the victims' young ages, Hoover's repeated sexual assaults over a period of years, breaches of the victims' trust, the use of drugs to incapacitate the victims, penetration, and the memorialization of his sexual violence by photographing and videotaping his degrading acts. For Hoover's crimes, the Legislature has mandated a basic term of imprisonment of "at least twenty years" and a maximum term of "any term of years." *See* 17-A M.R.S. § 1252(4-E).

[¶34] Viewed by these requirements, none of the individual sentences is constitutionally disproportionate. Hoover's aggregate sentence imposed here of sixty years may be "harsh," but it is not so severe that it results in an inference of gross disproportionality when compared to the gravity of Hoover's several offenses. *See Freeman*, 2014 ME 35, ¶¶ 10, 23, 87 A.3d 719 (concluding that a fifty-year sentence with ten years suspended for two convictions of attempted murder, consolidated for sentencing, where the three victims suffered no physical injuries was "harsh and at the far end of the range of sentences that could be imposed under these circumstances" but did not result in an inference of gross disproportionality).

[¶35]    Hoover's sentences may also be compared to the sentences addressed in *State v. Sweet*, 2000 ME 14, 745 A.2d 368.    There, forty-seven-year-old Richard Sweet pleaded guilty to gross sexual assault of a thirteen-year-old boy and sexual abuse of a minor perpetrated against a second victim.    *Id.* ¶¶ 2, 5.    Sweet was sentenced to thirty-five years' imprisonment for the gross sexual assault conviction followed by a consecutive five years for the sexual abuse of a minor conviction, for a total of forty years' imprisonment.    *Id.* ¶¶ 6-8.    Sweet's co-defendant, thirty-two-year-old Paul Poulin, pleaded guilty to gross sexual assault against two different victims and sexual abuse of a minor against a third victim.    *Id.* ¶¶ 3, 5.    The court sentenced Poulin to a sixty-five-year period of incarceration: thirty years' imprisonment for each gross sexual assault conviction and five years' imprisonment for the sexual abuse of a minor conviction, to be served consecutively.    *Id.* ¶¶ 6-8.

[¶36]    Sweet and Poulin challenged the length of their respective sentences.    *Id.* ¶ 22.    As to Sweet, we concluded that the trial court did not abuse its discretion in imposing such a long sentence when the sentence reflected the serious nature of the crimes, his criminal history, and the grave risks he posed to children.    *Id.* ¶¶ 23-24.    As to Poulin, we noted that Poulin

would not be released until he was in his eighties and that the sentencing court "intended to prevent Poulin from gaining access to any more children for many years." *Id.* ¶ 25. We concluded that the sentence

> although extraordinary in length, is sufficiently supported by the facts in the record that it must be affirmed. We note that a sentence of this length will be appropriate only in the most unusual cases and would not be appropriate in the absence of the multiple aggravating factors present here. . . . Here, the number of victims, the length of time during which the activities continued, the nature of the sexual activities, the dire effects on the victims, the defendant's own statements to the effect that a "boy lover" never changes, and the extremely significant risk of his reoffending upon release have all combined to warrant a sentence of significant length.

*Id.* ¶¶ 33-34.

[¶37] Evaluated in this context, Hoover's sentence does not carry an inference of gross disproportionality. *See Freeman*, 2014 ME 35, ¶ 23, 87 A.3d 719.

[¶38] We must also consider "whether [Hoover's sentence] offends prevailing notions of decency, whether it shocks the conscience of the public, or our own respective or collective sense of fairness, or whether it is inhuman or barbarous." *Ward*, 2011 ME 74, ¶ 18, 21 A.3d 1033. "[O]nly the most extreme punishment decided upon by the Legislature as appropriate for an offense could so offend or shock the collective conscience of the people of

Maine as to be unconstitutionally disproportionate, or cruel and unusual." *Id.* (alteration omitted).

[¶39] Examining Hoover's sixty-year term of imprisonment for four convictions of gross sexual assault committed against victims who were younger than twelve years old, the facts support the trial court's conclusion that "a lesser sentence than the one being imposed . . . would diminish the gravity of what occurred to these boys and also would violate the principle that this Court . . . must consider public safety in imposing sentences for this sort of conduct." "The Legislature could not have envisioned a much worse scenario" than what occurred in this case when it determined that "any term of years" is appropriate for this type of crime. 17-A M.R.S. § 1252(4-E); *Ward*, 2011 ME 74, ¶ 20, 21 A.3d 1033.

[¶40] Hoover's sentence neither carries an inference of gross disproportionality nor offends prevailing notions of decency, and, therefore, is not violative of the proportionality mandate of article I, section 9 of the Maine Constitution. *See Freeman*, 2014 ME 35, ¶ 23, 87 A.3d 719; *Gilman*, 2010 ME 35, ¶ 24, 993 A.2d 14.

The entry is:

Judgment affirmed.

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Wade R. Hoover

Maeghan Maloney, District Attorney, and Paul Cavanaugh II, Dep. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2013-486
Somerset County Superior Court docket number CR-2013-72
FOR CLERK REFERENCE ONLY