MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2021 ME 9
Docket:        SRP-20-17
Argued:        November 17, 2020
Decided:       February 23, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Majority:      MEAD, GORMAN, HUMPHREY, HORTON, and CONNORS, JJ.
Concurrence:   JABAR, J.

## STATE OF MAINE

v.

## MARIO GORDON

HUMPHREY, J.

[¶1]   In this appeal, Mario Gordon seeks our review of twelve-year concurrent sentences imposed on him for three counts of aggravated trafficking in scheduled drugs, 17-A M.R.S. § 1105-A(1)(B)(1), (D), (H) (2020), by the trial court (Kennebec County, *Benson, J.*) several months after the court had facilitated a plea agreement involving the dismissal of other charges.[1]  Gordon does not appeal from the judgment of conviction and argues only that he should be resentenced because the court (A) violated his due process rights by imposing the maximum sentences allowed by the plea agreement and

---

[1]  As explained below, Gordon was also convicted of other crimes, but he challenges the court's sentencing only as to these three charges.

(B) disregarded sentencing factors in declining to suspend a portion of Gordon's sentences and order probation. Based on the record properly before us, we affirm the sentences.

## I. BACKGROUND

[¶2]  The facts we consider are drawn from the procedural record.  In February 2017, Gordon was charged by indictment with three counts of aggravated trafficking in scheduled drugs (heroin, cocaine base, and oxycodone) (Class A), 17-A M.R.S. § 1105-A(1)(B)(1), based on conduct alleged to have taken place in December 2016.  The indictment also alleged two counts of criminal forfeiture.  15 M.R.S. § 5826 (2017).[2]

[¶3]  Gordon was released on bail but was arrested again in April 2018.  In July 2018, he was charged by indictment with seven counts of aggravated trafficking in scheduled drugs (heroin, cocaine, and cocaine base) (Class A), 17-A M.R.S. § 1105-A(1)(B)(1), (D), (H); and four violations of conditions of release (Class E), 15 M.R.S. § 1092(1)(A) (2020).  The indictment also included one count of criminal forfeiture, 15 M.R.S. § 5826.  As Class A crimes, the

---

[2]  This statute was amended after the commission of the charged crimes. *See* P.L. 2019, ch. 97, §§ 4-6 (effective Sept. 19, 2019); P.L. 2017, ch. 460, § F-1 (effective July 9, 2018) (codified at 15 M.R.S. § 5826 (2020)).

aggravated trafficking charges were punishable by up to thirty years of incarceration. 17-A M.R.S. § 1252(2)(A) (2018).[3]

[¶4] After finding Gordon competent to stand trial, the court held a dispositional conference on August 20, 2019. The parties reached a plea agreement that left open to Gordon a choice between two proposals by the State: an eight-year straight sentence or a twelve-year cap plea.

[¶5] On that same day—August 20, 2019—the court held a hearing pursuant to M.R.U. Crim. P. 11 at which Gordon entered a guilty plea and the court ensured that Gordon understood his rights, that he made the guilty plea knowingly and voluntarily, and that there was a factual basis for the plea. *See* M.R.U. Crim. P. 11(b)(1)-(3), (c)-(e). In open court, the court confirmed Gordon's understanding "that up to 12 years could be imposed" if he agreed to the plea with a twelve-year cap. Gordon also confirmed that he had not been made any other promises or offered any other benefits in exchange for his guilty plea.

[¶6] With respect to the initial 2017 indictment, Gordon pleaded guilty to one count of aggravated trafficking in oxycodone and admitted to the two

---

[3] This statute has been repealed and replaced with a new statute that provides the same maximum sentence. *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (codified at 17-A M.R.S. § 1604(1)(A) (2020)).

4

counts of criminal forfeiture. With respect to the 2018 indictment, he pleaded guilty to three counts of aggravated trafficking—one in heroin, one in cocaine base, and one in cocaine; and two counts of violating conditions of release. He also admitted to the count of criminal forfeiture.

[¶7] Gordon selected the twelve-year-cap option, and the court held a sentencing hearing on December 18, 2019. In its sentencing memorandum, the State argued for a straight twelve-year sentence on each of the 2018 aggravated trafficking charges with no period of probation and the imposition of mandatory fines. In Gordon's memorandum and at the hearing, he argued for a sentence of ten years with all but four years suspended and a four-year period of probation.

[¶8] Based on the types and amounts of drugs involved, the court found that a basic sentence of twelve years was appropriate for each of the 2018 trafficking charges. *See* 17-A M.R.S. § 1252-C(1) (2018).[4] The court then considered mitigating and aggravating factors to determine the maximum sentence. *See* 17-A M.R.S. § 1252-C(2) (2018). As mitigating factors, the court considered Gordon's acceptance of responsibility, his psychiatric condition, and

---

[4] As part of a recodification of Maine's sentencing statutes, 17-A M.R.S. § 1252-C was repealed and replaced. *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (codified at 17-A M.R.S. § 1602 (2020)).

his family's support of him. As aggravating factors, the court considered that Gordon had prior serious drug convictions and had trafficked in drugs to support himself. The court concluded that the aggravating and mitigating factors balanced each other out, and it set a maximum sentence of twelve years. Based on the need for deterrence and prevention of drug trafficking, the court determined that no portion of the period of incarceration would be suspended. *See* 17-A M.R.S. § 1252-C(3) (2018). Thus, the court imposed a sentence of twelve years, all unsuspended, for each of the three 2018 aggravated trafficking charges, with the sentences to run concurrently, with a $400 noncumulative fine.[5]

[¶9] Gordon filed a motion with the trial court seeking to correct or reduce his sentences on the ground that the court had overlooked its own statement, made at the dispositional conference, that more lenient, but unaccepted, sentencing proposals that each of the parties had offered were "within the realm of reasonableness." *See* M.R.U. Crim. P. 35. Gordon and his

---

[5] The court imposed a six-month sentence for each of the two charges for violating conditions of release, to run concurrently with each other and with the aggravated trafficking sentences. For the 2017 aggravated trafficking charge, the court imposed a sentence of four years, to run concurrently with the twelve-year sentences for the 2018 crimes, and it imposed a $400 fine. The court also entered judgments for the State on the 2017 and 2018 counts for criminal forfeiture. All other charges were dismissed.

6

counsel submitted affidavits, as did the State, to summarize what had happened during the unrecorded conference held on August 20, 2019.

[¶10] The court denied Gordon's motion, ruling that there had not been any mistake of fact on the court's part regarding what had occurred at the dispositional conference and that the sentences ultimately imposed, which were consistent with the parties' plea agreement as presented to the court, were legal and appropriate. Gordon did not appeal from the judgment of conviction or from the ruling on the motion to correct or reduce the sentence.

[¶11] Upon Gordon's application, the Sentence Review Panel granted Gordon leave to appeal his sentences. *See* 15 M.R.S. § 2152 (2020); M.R. App. P. 20.

## II. DISCUSSION

A. Due Process

[¶12] Gordon argues that the court's statements made at the dispositional conference rendered the twelve-year sentences imposed on him unfair, in violation of his due process rights.[6] The United States and Maine

---

[6] Gordon did not raise, and we do not address, any issues concerning the voluntariness of his plea. A judgment of conviction may be challenged on the ground that a plea was not entered voluntarily, but that challenge must be brought on post-conviction review. *See State v. Adams*, 2018 ME 60, ¶ 12, 184 A.3d 875. Gordon contends only that, because of what the court stated during the dispositional conference, the sentences ultimately imposed are unfair and he should be resentenced. The potential pertinence of part of the discussions at the dispositional conference to a voluntariness determination

Constitutions prohibit Maine's government from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A. We review issues of due process de novo. *See State v. Williamson*, 2017 ME 108, ¶ 21, 163 A.3d 127. We review the court's sentencing to determine whether the procedures employed "struck a balance between competing concerns that was fundamentally fair." *State v. Mullen*, 2020 ME 56, ¶ 21, 231 A.3d 429 (quotation marks omitted).

[¶13] In a sentence review, we are "limited to consideration of the propriety of the sentence and the sufficiency and accuracy of the information on which it was based."[7] *State v. Reese*, 2010 ME 30, ¶ 21, 991 A.2d 806. In this analysis, "[w]e look to whether the sentencing court disregarded the statutory sentencing factors, abused its sentencing power, permitted a manifest and unwarranted inequality among sentences of comparable offenders, or acted irrationally or unjustly." *Id.*; *see* 15 M.R.S. § 2154 (2020). Because Gordon did not bring a direct appeal from the judgment of conviction or from the court's ruling on his motion to correct or reduce his sentences, we review only his

---

does not prevent us from reviewing whether the sentence was proper based on the information available to the court at sentencing.

[7] In contrast, when a party has brought a direct appeal from a sentence, we review "the legality, and not the propriety, of the sentence." *State v. Dobbins*, 2019 ME 116, ¶ 51, 215 A.3d 769.

contention that the court abused its sentencing power or acted unjustly in the sentencing process, in violation of due process. *Reese*, 2010 ME 30, ¶ 21, 991 A.2d 806.

[¶14] To ensure that all terms of the plea agreement are understood by the parties and the court before a defendant enters his plea, Rule 11 requires that the court "inquire as to the existence and terms of a plea agreement," M.R.U. Crim. P. 11(d), and that the terms of a plea agreement be recited in open court on the record, *see* M.R.U. Crim. P. 11A(b). In reviewing the sentence imposed based on a plea agreement that has been reached and memorialized in compliance with Rules 11 and 11A, we consider both the Rule 11 hearing and the sentencing proceedings, including the hearing transcripts and the materials submitted to the court before sentencing. *See, e.g.*, *State v. Lord*, 2019 ME 82, ¶ 19, 208 A.3d 781.

[¶15] The record of the plea proceedings here reflects the plain terms of the plea agreement and the parties' unequivocal assent to those terms. The record of the sentencing reveals that the court sentenced Gordon within the range of the twelve-year-cap option that Gordon elected to accept. There is no basis for us to decide, based on off-the-record statements made during a

dispositional conference,[8] that the plea agreement in this case was anything other than what was placed on the record in open court at the time of Gordon's plea.[9] Thus, we discern no injustice or violation of due process in the record properly before us. *See Reese*, 2010 ME 30, ¶ 21, 991 A.2d 806.

B.      Application of the Sentencing Statute

[¶16]   We next consider whether the court misapplied the sentencing statute or abused its sentencing power in imposing the twelve-year sentences. Gordon also contends that the court misapplied the statute governing the determination of the final sentence by failing to consider all relevant factors,

---

[8] The concurring opinion focuses on the unrecorded discussions at the dispositional conference four months before sentencing. Rules 11 and 11A are designed to obviate the need for this kind of evidence on sentence review, however, by requiring that the court "inquire as to the existence and terms of a plea agreement," and that the terms of the plea agreement be disclosed on the record in open court to ensure that there is a fully integrated, unambiguous plea agreement and that the State, the defendant, and the court understand its terms. M.R.U. Crim. P. 11(d), 11A(b). Consistent with this purpose, the sentences imposed fall within the terms of the plea agreement stated in open court, and Gordon does not argue that the plea agreement has been violated. Nor did Gordon appeal from the order denying his motion to correct or reduce his sentence. Thus, we cannot conclude that any statements made at the dispositional conference are properly before us for purposes of reviewing the propriety of Gordon's sentence.

[9] To the extent that Gordon seeks review of the consequences of the court's statements made in the dispositional conference, "[c]hallenges to a conviction after a guilty plea on grounds of involuntariness of the plea, lack of knowledgeability on the part of the defendant regarding the consequences of his plea, ineffective assistance of counsel, misrepresentation, coercion or duress in securing the plea, the insanity of the pleader, or noncompliance with the requirements of M.R. Crim. P. 11 are collateral and may be pursued only by post-conviction review . . . ." *Adams*, 2018 ME 60, ¶ 11, 184 A.3d 875 (quotation marks omitted); *see* 15 M.R.S. §§ 2121-2132 (2020); M.R.U. Crim. P. 65-75A.

particularly his family's support of him and the ways in which probation would assist him with his mental health and substance use issues.

[¶17] In the final step of sentencing—the step at issue here—"[t]he court [must] finally determine what portion, if any, of the maximum term of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension." 17-A M.R.S. § 1252-C(3). In sentencing, the court must "articulate which sentencing goals are served by the sentence." *Reese*, 2010 ME 30, ¶ 17, 991 A.2d 806. "We review the sentencing court's analysis at each step to determine whether it disregarded the relevant sentencing factors or abused its sentencing power." *State v. Hansen*, 2020 ME 43, ¶ 27, 228 A.3d 1082 (alteration omitted) (quotation marks omitted). In doing so, we accord heightened deference to "the court's determination whether to suspend any portion of th[e] maximum period in arriving at the *final* sentence imposed on the offender by the court." *State v. Prewara*, 687 A.2d 951, 953 (Me. 1996) (quotation marks omitted).

[¶18] The goals of sentencing are set forth in statute and are, among others, "[t]o prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety," and "[t]o give fair warning of the

nature of the sentences that may be imposed on the conviction of a crime." 17-A M.R.S. § 1151(1), (4) (2018).[10]  Although a court may order a period of probation if it determines that "the person is in need of the supervision, guidance, assistance or direction that probation can provide," 17-A M.R.S. § 1201(2) (2018), that remains in the court's discretion, and a court will not order probation if it "finds that such a sentence would diminish the gravity of the crime for which that person was convicted," 17-A M.R.S. § 1201(1)(D) (2018).[11]  "The court is not required to discuss every argument or factor that the defendant raises, as long as it does not disregard significant and relevant sentencing factors."  *Reese*, 2010 ME 30, ¶ 34, 991 A.2d 806.

[¶19]  Before determining the sentences here, the court thanked the parties for their "exhaustive sentencing memoranda" and indicated that it had "carefully considered" the memoranda in determining the sentence.  The court then set a basic sentence of twelve years based on the significant amounts of cash and drugs involved and the types of drugs that Gordon was trafficking.  In determining the maximum sentence, the court explicitly considered mitigating

---

[10]  Title 17-A M.R.S. § 1151 (2018) has been repealed and replaced.  *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (codified at 17-A M.R.S. § 1501 (2020)).

[11]  Title 17-A M.R.S. § 1201 (2018) has been repealed and replaced.  *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (codified at 17-A M.R.S. § 1802 (2020)).

factors such as the supportiveness of Gordon's family, including regarding his mental health, but it found that these mitigating factors were offset by a record of six serious drug convictions going back to 2002 and Gordon's practice of supporting himself through drug trafficking.

[¶20]  At the final stage of sentencing, which is at issue here, the court identified what it considered to be the crucial sentencing goals: "the prevention of crime through the deterrent effect of sentencing," and the giving of "fair warning of the nature of sentencing, and of the other purposes of sentencing." Thus, the court based its final determination not to suspend a portion of the sentence or order a period of probation on proper sentencing goals primarily related to general and specific deterrence.  *See* 17-A M.R.S. § 1151(1), (4); *see also Hansen*, 2020 ME 43, ¶ 32, 228 A.3d 1082 (holding that the court did not abuse its discretion in the third step of its sentencing analysis when it considered all goals and purposes of sentencing and noted the factor that was of paramount concern).

[¶21]  Although the court did not reference Gordon's mental health or family support in determining whether to suspend any portion of the sentences and order probation, it is clear from the court's consideration of those facts as mitigating factors that the court did not disregard that evidence.  Furthermore,

the court explicitly recognized Gordon's argument that probation would make a difference for him upon release. The court considered deterrence to be the most significant sentencing goal, however, when determining whether it should suspend any portion of the twelve-year sentence for each crime and order probation. *See Reese*, 2010 ME 30, ¶ 34, 991 A.2d 806.

[¶22] The court did not misapply sentencing principles or abuse its sentencing authority when it determined, based on the information provided at sentencing, that, for the purpose of deterring drug trafficking, concurrent, unsuspended twelve-year sentences with no period of probation were appropriate for the three 2018 aggravated trafficking convictions. We affirm the sentences.

The entry is:

> Sentences affirmed.

---

JABAR, J., concurring.

[¶23] I agree with the Court's decision to affirm the trial court's sentences and its reliance on *State v. Adams*, 2018 ME 60, ¶ 12, 184 A.3d 875.

14

[¶24]　However, I write separately to discuss an issue surrounding a judge's role in plea negotiations that we should address.

[¶25]　I believe that in this case the trial judge, although doing so unintentionally, misled Gordon and Gordon's defense attorney when he indicated that he thought the prosecution's recommendation of eight years and the defense's recommendation of ten years with all but six years suspended were both reasonable sentences. Gordon and his attorney relied on what I would characterize as an indication of the range of sentences in which the judge might impose a sentence in this case. Based on this expression by the judge, Gordon chose to plead guilty with an agreed-upon cap of twelve years.

A.　Plea Bargains and Judicial Facilitation

[¶26]　In 1970, in *Brady v. United States,* the United States Supreme Court stated that it "has long been recognized" that a "a guilty plea is a grave and solemn act to be accepted only with care and discernment." 397 U.S. 742, 748 (1970). However, the *Brady* Court also stated that guilty pleas occurred in "well over three-fourths of the criminal convictions in this country." *Id.* at 752. Since *Brady*, this number has only continued to grow. *See* National Association of Criminal Defense Lawyers, *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It* 5 (2018) ("[O]ver the last fifty

years, trial by jury has declined at an ever-increasing rate to the point that this institution now occurs in less than 3% of state and federal criminal cases. Trial by jury has been replaced by a system of guilty pleas which diminishes, to the point of obscurity, the role that the Framers envisioned for jury trials as the primary protection for individual liberties and the principal mechanism for public participation in the criminal justice system." (alteration omitted) (footnotes omitted) (quotation marks omitted)).

[¶27] Judicial facilitation has a role in protecting the defendant's individual liberties. For a long time, this role was taboo because "[t]he unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not." *United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, 254 (S.D.N.Y. 1966). *See also* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(d) at 895 (4th ed. 2015) ("Some years ago there was a general consensus that trial judges should not participate in the pretrial negotiations which influence a great many defendants to plead guilty.").

[¶28]   However, states began to recognize that judicial facilitation, although a risk because of the power the judge's position holds, can be beneficial to running an efficient court system.  *See* Nancy J. King & Ronald F. Wright, *The Invisible Revolution in Plea Bargaining: Managerial Judging and Judicial Participation in Negotiations*, 95 Tex. L. Rev. 325, 327 (Dec. 2016) ("What once were informal, sometimes-illicit interactions between judges and parties in criminal cases have in many courts evolved into highly structured best practices for docket management.").

[¶29]  In 2015, we, in our role as the Supreme Judicial Court *not* sitting as the Law Court, recognized the benefit of judicial facilitation and amended Rule 11A and adopted Rule 18 to allow the court to "participate in the negotiation of the specific terms of the plea agreement in the manner set forth in Rule 18 relating to dispositional conferences."   M.R.U. Crim. P. 11A(a). *See* M.R.U. Crim. P. 18.  In Rule 18(b) we stated that

> [t]he court shall have broad discretion in the conduct of the dispositional conference.  Counsel and unrepresented defendants must be prepared to engage in meaningful discussion regarding all aspects of the case with a view toward reaching an appropriate resolution.  The court may participate in such discussions and may facilitate a plea agreement by suggesting or addressing a specific aspect of the matters under consideration.

M.R.U. Crim. P. 18(b).

[¶30]  In adopting this preference for a meaningful discussion toward reaching an appropriate resolution, we gave the court broad discretion. Although other states have given direction to trial judges regarding their conduct during plea negotiations, we have not had the chance to comment on the limits of that broad discretion.  We should do so in this case.

B.      Sentencing Inclination

[¶31]  In 2013, the California Supreme Court explained that indicated sentencing, also referred to as sentencing inclination, served a different role than the plea bargain because "the charging function is entrusted to the executive" branch of government.  *People v. Clancey*, 299 P.3d 131, 135 (Cal. 2013).  However, the court could "indicate what sentence it will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea."  *Id.* (alteration omitted) (quotation marks omitted).

[¶32]  The California court provided instruction on how and when the court could make these indications, and the instruction was important because of the "prospect of prosecutorial intransigence and judicial overreach[ ]."  *Id.* at 138.  Its first instruction is especially relevant when considering the facts of this case:

> [I]n order to preserve the executive's prerogative to conduct plea negotiations, a trial court generally should refrain from

announcing an indicated sentence while the parties are still negotiating a potential plea bargain. The "horse trading" between the prosecutor and defense counsel is the process by which the vast majority of criminal cases are disposed. Absent unusual circumstances, there is little need for a court to articulate its view of the case until the parties are satisfied that further negotiations are unlikely to be productive. Even then, a trial court may prudently refrain unless the court is convinced the punishment proposed by the People is not an appropriate sanction for the particular defendant and the specific offense or offenses.

*Id.* (citations omitted). The California court then instructed the trial courts to "consider whether the existing record . . . is adequate to make a reasoned and informed judgment," to "not offer any inducement in return for a plea of guilty or nolo contendere," and to "not *bargain* with a defendant over the sentence to be imposed." *Id*. at 138-39 (quotation marks omitted).

[¶33] In *State v. Sanney,* the Hawaii Supreme Court agreed with the California approach to sentencing inclination. 404 P.3d 280, 287 (Haw. 2017). In that case the defendant did not have a plea agreement with the prosecutor but he "agreed to change his plea after his attorney said the judge was inclined to sentence him to probation with up to eighteen months in jail (of which he had already served about ten months)." *Id.* at 283.

[¶34] At that point, the court held a change of plea hearing and the defense attorney stated on the record that he "did relay to [the defendant] that the Court ha[d] given us an inclination for probation in this case with up to

18 months in jail, and, you know, based on that inclination [the defendant was] intending to change his plea." *Id.* At the change of plea hearing the court informed the defendant that "an inclination is not a promise" and that the court would still consider the presentence report and the arguments at the sentencing hearing. *Id.*

[¶35] On appeal, although finding no error in the case, the Supreme Court of Hawaii took the opportunity to adopt a plea withdrawal standard in cases that involve the court giving a sentencing inclination but later deciding not to follow through with it. The new rule states,

> [I]f a defendant pleads guilty or no contest in response to a court's sentencing inclination, but the court later decides not to follow the inclination, then the court must so advise the defendant and provide the defendant with the opportunity to affirm or withdraw the plea of guilty or no contest.

*Id.* at 291.[12] *See also* Haw. R. Penal P. 32(d); *State v. Jim*, 574 P.2d 521, 523 (Haw. 1978) ("What the manifest injustice rule seeks to avoid is an opportunity for

---

[12] In adopting this rule, the Hawaii Supreme Court referenced the American Bar Association's Plea Bargain Standard 14-2.1 for "Plea withdrawal and specific performance," which allows for a withdrawal of a guilty plea when it is "necessary to correct a manifest injustice." *State v. Sanney*, 404 P.3d 280, 288 (Haw. 2017) (quotation marks omitted). The court recognized that the standard did not explicitly refer to scenarios when judges provide sentencing inclinations, but the court reasoned that "the ABA Standard applies, however, even when a court has not agreed to be bound, but has merely indicated a tentative inclination to follow a plea agreement, including sentencing recommendations. Stating a tentative inclination to follow the sentencing recommendations of a plea agreement is analogous to giving a sentencing inclination without a plea agreement. Thus, the ABA Standard can be analogized to situations where a court changes its sentencing inclination." *Id.* at 288-89.

the defendant to test the severity of sentence before finally committing himself to a guilty plea." (quotation marks omitted)). One of its stated reasons for adopting this standard was that "the new rule will foster public confidence in the judicial system, as defendants will no longer question whether they were somehow misled into entering into a change of plea based on a judge's stated sentencing inclination." *Sanney,* 404 P.3d at 291.

## C. Gordon's Case

[¶36] In this case, the court held a dispositional conference in chambers that was unrecorded; however, the parties agree on what was said during the conference. The State offered Gordon a plea that would impose an eight-year straight sentence and mandatory fines, and Gordon's counsel represented that Gordon would agree to a sentence of ten years with all but six years suspended and a period of probation. After this, the judge stated that both of the proffered dispositions were either "within the realm of reasonableness" or that "both sides were being reasonable." The judge then asked what the State would propose for a "cap" agreement that would allow Gordon to argue for less. The State stated that it would recommend twelve years plus applicable fines for any cap agreement.

[¶37]  After the dispositional conference, Gordon's counsel consulted with Gordon.  Gordon's counsel advised him that he "believed that the worst-case scenario would be that the judge would impose the 8-year sentence . . . since the judge had said that the State's offer was reasonable," and counsel recommended that Gordon choose the twelve-year-cap option and argue for a lesser sentence.  Gordon's counsel advised him that the best he could hope for was ten years with all but six years suspended and probation with conditions.  Gordon chose to proceed with the cap recommendation, as long as the judge who conducted the dispositional conference was the sentencing judge.

[¶38]  At the Rule 11 hearing the prosecutor explained that the plea agreement was not completely negotiated and that Gordon was given the option of proceeding with the State's recommendation of eight years straight or a recommendation of a twelve-year cap, and Gordon would be able to argue for less.  The court then asked Gordon if he understood the options and that "one is one that would allow [him] and [his attorney] to argue for a lesser period of time, but that up to 12 years could be imposed."  Gordon stated that he understood.

[¶39]  Gordon later indicated to the State that he was going choose the option of a twelve-year cap that would allow him to argue for less.  This choice

was obviously based on what the judge had expressed during the dispositional conference as a reasonable sentence and explains why Gordon indicated to his attorney that he only wanted to enter a guilty plea in front of the judge who handled the dispositional conference.

[¶40] At the sentencing hearing, the State argued for a straight twelve-year sentence with no period of probation and the imposition of mandatory fines. Gordon argued for a sentence of ten years with all but four years suspended and a four-year period of probation. The parties' presentation of recommendations—to ask for more or less than what they were willing to accept at the dispositional conference—is a common sentencing practice. The prosecutor wanted an eight-year sentence and therefore asked for a sentence of more than eight years. The defense wanted a ten-year sentence, with all but six years suspended, and so he requested a ten-year sentence all but four years suspended. The judge was well aware of what the parties' positions were before they agreed to the twelve-year cap. The State and the defense attorney both knew that the judge indicated that the State's recommendation of eight years was a reasonable position and the defendant's recommendation of ten years with all but six years suspended was also a reasonable recommendation.

[¶41]   The Court in its opinion did not address whether the judge's statements during the dispositional conference regarding reasonable sentences constituted an expression of a "sentencing inclination" that might have misled Gordon into entering a plea of guilty.  I believe that the judge did give an inclination of at least the range of sentences within which he would impose Gordon's sentence upon Gordon's guilty plea.  Although the judge did not express a specific sentence during the dispositional conference, he did state that the State's recommendation of eight years was reasonable and the defense's recommendation of ten years with all but six years suspended was reasonable.  Anyone who has participated in these types of negotiations knows that when a judge indicates that eight years and six years are reasonable sentence recommendations, then the judge is willing to accept a sentence between the two positions in order to facilitate a plea agreement.  When the parties cannot agree to a specific sentence but are not far apart, as was the case here, it is a common practice for the judge to suggest that the parties agree to a cap, which the judge did here, and then he would impose the final sentence, usually something within the range that both parties had recommended.  It was not unreasonable for Gordon's attorney to come to this conclusion and advise Gordon as such.

24

[¶42] If, during the sentencing hearing, additional information is revealed about Gordon that the judge did not have at the time of the dispositional conference, it is certainly understandable that the judge may no longer believe that a sentence between eight years and six years was reasonable. Here, there is nothing on the record indicating what the judge knew about Gordon's background and record at the time of the dispositional conference and how it compared with what he learned at the time of sentencing. However, if the judge learned additional information about the case and Gordon during the sentencing hearing that he did not know at the time of the dispositional conference and this information changed his assessment regarding the reasonableness of the parties' recommendations, then the judge should have informed Gordon that he had changed his initial assessment and he should have given Gordon the opportunity to withdraw his guilty plea. *See Sanney,* 404 P.3d at 290; *Clancey*, 299 P.3d at 135.

[¶43] The twelve-year sentence imposed by the judge is not within the "realm of reasonableness" expressed by the judge during the dispositional conference. It is apparent that the judge's analysis regarding what he thought was a reasonable sentence changed. The sentence imposed by the judge is twice what Gordon's attorney recommended during the dispositional

conference and 50% higher than what the State recommended during the dispositional conference. If at the time of the dispositional conference the judge was thinking that twelve years was a possible sentence, then he should have not expressed the opinion that ten years with all but six years suspended was a reasonable recommendation. If the judge learned additional information at the time of the sentencing that changed his initial assessment regarding the reasonableness of a six-year sentence, then he should have indicated so to Gordon before imposing the sentence.

[¶44]  Although the judge did not indicate a specific sentence, when he expressed his opinion that the State's recommendation and Gordon's recommendation were within the realm of reasonableness, he did provide a sentencing inclination that facilitated the guilty plea.

[¶45]  With Gordon's extensive criminal record, the court did not abuse its discretion by sentencing Gordon to twelve years. But for the fact that Gordon was misled by the judge's statement during the dispositional conference, the judge properly sentenced Gordon using the *Hewey* analysis. *State v. Hewey*, 622 A.2d 1151 (Me. 1993).

[¶46]  We should adopt the standard set by Hawaii and California and hold that if the judge expresses a sentencing inclination and the defendant

relies on that in accepting a guilty plea, then if the judge changes his mind from that sentencing inclination he must advise the defendant of his change of inclination. If the request to withdraw a plea is made before the sentence is imposed, then "the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice." *Sanney,* 404 P.3d at 290 (quotation marks omitted). If the request to withdraw is made after the sentence is imposed, then the defendant must prove that a manifest injustice has occurred. *Id.* I do believe that judges play a very important role in facilitating plea agreements, and it is not something we should discourage; however, judges must be aware that their comments can have a significant impact on a defendant's decision to enter a guilty plea, especially if the judge makes a quantitative or qualitative expression regarding any particular sentence.

D.      Conclusion

[¶47]  In this case the defense did not present a motion to withdraw the guilty plea and any challenges to a conviction on the ground of involuntariness of the plea, misrepresentation, coercion, or duress in securing the plea must be left to post-conviction review pursuant to Title 15 M.R.S. §§ 2121-2132 (2020). I agree with the Court that we have no choice but to affirm.

Brad C. Grant, Esq. (orally), Ferris, Gurney, Grant & Crook PA, Waterville, for appellant Mario Gordon

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket numbers CR-2016-3007 and CR-2018-593
FOR CLERK REFERENCE ONLY